IN THE IOWA DISTRICT COURT
IN AND FOR SCOTT COUNTY

| | |
|---|---|
| CHERI DAHLIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DEAN DAHLIN, Deceased,<br><br>*Plaintiffs,*<br><br>vs.<br><br><u>ARCHER-DANIELS MIDLAND COMPANY,</u> LYONDELL CHEMICAL COMPANY, OCCIDENTAL CHEMICAL CORPORATION, EQUISTAR CHEMICALS, LP, and EQUISTAR GP, LLC,<br><br>*Defendants.* | Case No. 125137<br><br>ORIGINAL NOTICE |

TO THE ABOVE-NAMED DEFENDANT:

You are notified that a petition has been filed in the office of the clerk of this court naming you as the respondent in this action. A copy of the petition (and any documents filed with it) is attached to this notice. The attorney for the plaintiff is Robert S. Gallagher, whose address is 3870 Middle Road, Bettendorf, Iowa 52722. That attorney's telephone number is (563) 355-5303, facsimile number is (563) 388-9240.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Scott County, at the county courthouse in Davenport, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of disability, immediately call your district ADA coordinator at (563) 326-8607. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)

JULIE C. CARLIN

*signature*

CLERK OF COURT
Scott County, Davenport, Iowa

**IMPORTANT**

YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

H:\WPDOCS\A- D\D\DAHLIN\CHERI28744\DEANWDEATH001\PLEADINGS\ORIGINALNOTICE2014.06.03.DOCX

**EXHIBIT A**

FILED

IN THE IOWA DISTRICT COURT
IN AND FOR SCOTT COUNTY

2014 JUN -4 AM 9:09

| | | |
|---|---|---|
| CHERI DAHLIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DEAN DAHLIN, Deceased | ) ) ) ) | Case No. 125137 |
| *Plaintiffs,* | ) ) | PETITION AND JURY DEMAND |
| vs. | ) ) | |
| ARCHER-DANIELS MIDLAND COMPANY, LYONDELL CHEMICAL COMPANY, OCCIDENTAL CHEMICAL CORPORATION, EQUISTAR CHEMICALS, LP, and EQUISTAR GP, LLC, | ) ) ) ) ) ) | |
| *Defendants.* | ) | |

NOW COMES the Plaintiffs, CHERI DAHLIN, individually and on behalf of THE ESTATE OF DEAN DAHLIN, and in support of their Petition against, ARCHER-DANIELS MIDLAND COMPANY, LYONDELL CHEMICAL COMPANY, OCCIDENTAL CHEMICAL CORPORATION, EQUISTAR CHEMICALS, LP, and EQUISTAR GP, LLC, hereinafter referred to as Defendants, respectfully states to the Court as follows:

## PRELIMINARY ALLEGATIONS

1. The Plaintiff, Cheri Dahlin, is an adult resident of the state of Iowa residing in LeClaire, Scott County, Iowa.

2. The Plaintiff, Cheri Dahlin, is the duly appointment Administrator of the Estate of Dean Dahlin is duly filed in the Iowa District Court in and for Scott County.

3. The Defendant, ARCHER-DANIELS MIDLAND COMPANY is a Delaware Corporation doing business in the State of Iowa and may be served with process through its

registered agent for service, to wit: CT Corporation System, 500 East Court Avenue, Des Moines, Iowa 50309.

4. Defendant, LYONDELL CHEMICAL COMPANY is a Delaware Corporation doing business in the State of Iowa and may be served with process through its registered agent for service, to wit: CT Corporation System, 500 East Court Avenue, Des Moines, Iowa 50309.

5. Defendant, OCCIDENTAL CHEMICAL CORPORATION is a New York Corporation doing business in the State of Iowa and may be served with process through its registered agent, to wit: CT Corporation System, 500 East Court Avenue, Des Moines, Iowa 50309.

6. Defendant, EQUISTAR CHEMICALS, LP is a Delaware Corporation doing business in the State of Iowa and may be served with process through its registered agent for service, to wit: CT Corporation System, 500 East Court Avenue, Des Moines, Iowa 50309.

7. Defendant, EQUISTAR GP, LLC is a Delaware Corporation doing business in the State of Iowa and may be served with process through its registered agent for service, to wit: CT Corporation System, 500 East Court Avenue, Des Moines, Iowa 50309.

8. This Action meets the applicable jurisdictional requirements for the amount in controversy.

9. The State of Iowa has jurisdiction of this matter because the incidents at issue occurred in the State of Iowa.

## FACTS

10. From approximately 1989 to 1993, Dean Dahlin worked as a commercial truck driver for Dahlen Transport, Inc. Mr. Dahlin's duties included loading, transporting, and unloading benzene and benzene-containing products from the Clinton Complex petrochemical

COMPLAINT                                                                                                           PAGE 2

facility located on Anamosa Road in Clinton, Iowa to the Clinton Municipal dock storage facility in South Clinton, Iowa. The Clinton Municipal dock is owned and/or operated by Defendant Archer-Daniels Midland Company.

11. During the period of Mr. Dahlin's exposures, the Clinton Complex was owned and/or operated by Quantum Chemical Corporation. In 1996, Quantum Chemical Corporation and several other entities combined to form Millennium Chemicals. In 1997, Quantum Chemical Corporation changed its name to Millennium Petrochemicals, Inc. During this time, Lyondell Petrochemical Company combined its business with Millennium Petrochemicals, Inc. to form Defendant Equistar Chemicals, LP. In 1998, Defendant Occidental Chemical Corporation became the 3rd venture partner in Equistar Chemicals, LP. In 2004, after a series of acquisitions and mergers, Defendant Lyondell Chemical Company acquired Defendant Equistar Chemicals, LP and Defendant Equistar GP, LLC, which are now subsidiaries of Defendant Lyondell Chemical Company, and currently own and/or operate the Clinton Complex.

12. In the course of his work, Mr. Dahlin was exposed, through inhalation, ingestion, and dermal contact, to harmful levels of benzene and other toxins and carcinogens through his work with the benzene and benzene-containing products. The benzene Mr. Dahlin was exposed to while performing his duties was manufactured, supplied, sold, marketed and/or distributed by Defendants.

13. On or about June 6, 2012, Dean Dahlin was diagnosed with myelodysplastic syndrome (MDS), transforming to acute myeloid leukemia (AML). On June 16, 2013, Mr. Dahlin died from AML. Dean Dahlin's exposures to Defendants' benzene and benzene-containing products were a legal cause of his developing blood disorders, diseases, MDS, and

death. Plaintiff, Cheri Dahlin is Dean Dahlin's surviving spouse and was duly appointed as Administrator of his Estate.

## COUNT ONE – NEGLIGENCE

14. Plaintiff would show that Dean Dahlin was exposed to a deadly situation by Defendants in this case. Plaintiff alleges, as more specifically set out below, that Dean Dahlin contracted MDS/AML, and such illness was proximately caused by Defendants' negligent acts, and by Dean Dahlin's exposures to products designed, produced, manufactured, marketed, placed into the system of commerce, sold or used by Defendants.

15. Dean Dahlin's illness and death, and Plaintiff's subsequent damages are a direct and proximate result of the negligence of Defendants or, where applicable, the employee or the agent of Defendants.

16. Defendants, at all times material to this action, had a duty to any and all consumers and workers, including Dean Dahlin, to exercise reasonable care in creation, manufacturing, production, and distribution of its respective products into the stream of commerce, including a duty to assure the products did not pose a significantly increased risk of injury, including, without limitation, MDS/AML. Defendants breached the duties owed to Dean Dahlin and Plaintiff and were negligent in the following respects:

    a. Defendants knew that the products they utilized, distributed, marketed, and/or manufactured were deleterious, poisonous, carcinogenic, and highly harmful to Dean Dahlin's body and health; notwithstanding which, Defendants failed to take any precautions or to warn Dean Dahlin of the dangers and harm to which he was exposed while handling these products;

    b. Defendants knew that products used by or in proximity to Dean Dahlin were carcinogenic, deleterious, and highly harmful to his body and health and that Dean Dahlin would not have known of such dangerous properties; notwithstanding which, Defendants failed to provide Dean Dahlin with sufficient knowledge as to what would be reasonably safe and sufficient

wearing apparel and proper protective equipment and appliances to protect him from being damaged by exposure to such products;

c. Defendants knew that the products used by or in proximity to Dean Dahlin contained carcinogenic and highly harmful substances to the human body and health; notwithstanding which, Defendants failed to take any precautions or to exercise care by placing any warnings or cautions on the containers of such products or the products themselves to warn the handlers thereof the dangers to health in coming into contact with these products;

d. Defendants knew that the products used by or in proximity to Dean Dahlin contained deleterious and carcinogenic substances; notwithstanding which, Defendants failed to take reasonable care to warn Dean Dahlin of said danger and/or instruct Dean Dahlin in the proper handling of said products or to take proper precautions or exercise care to protect Dean Dahlin from harm and failed to timely adopt and enforce a safety plan method of handling products;

e. Defendants knew or should have known that their products that they introduced into the stream of commerce were carcinogenic and failed to adequately warn;

f. Defendants created dangerous conditions on their premises;

g. Defendants failed to keep their premises in a reasonably safe condition;

h. Defendants failed to give adequate warnings of the dangerous conditions on their premises;

i. Defendants failed to protect invitees, such as Dean Dahlin, from the hazards associated with exposure to these toxic and carcinogenic chemicals and substances;

j. Defendants failed to medically monitor or perform industrial hygiene monitoring for Dean Dahlin;

k. Defendants supplied benzene and solvents with marketing, design, and/or manufacturing defects;

l. Defendants committed acts or omissions while having a right to control;

m. Defendants failed to properly exercise the right to control;

n. Defendants failed to provide a safe place to work;

    o.    Defendants failed to provide adequate safety equipment;

    p.    Defendants failed to monitor chemical and toxic substance levels in the workplace;

    q.    Defendants supplied products with marketing, design, and/or manufacturing defects; and

    r.    Such other acts or omissions of negligence, gross negligence, malice and/or strict products liability that may be proven at trial.

17. Such acts and omissions constituting negligence were a proximate cause of the illness and death of Dean Dahlin and injuries and damages sustained by Plaintiff, including but not limited to:

    a.    Prior to his death, Dean Dahlin suffered great physical pain and mental anguish;

    b.    Prior to his death, Dean Dahlin incurred hospital and/or medical and/or pharmaceutical and/or other expenses;

    c.    Prior to his death, Dean Dahlin suffered physical impairment;

    d.    Prior to his death, Dean Dahlin suffered permanent partial disability;

    e.    Prior to his death, Dean Dahlin required medical monitoring and required domestic help and nursing care due to his disabilities;

    f.    Prior to onset of his symptoms, Dean Dahlin was extremely active and participated in numerous hobbies and activities, and, as a result of his illnesses, he was prevented from engaging in all of said activities which were normal to him prior to developing symptoms from his disease; and,

    g.    Loss of earning capacity and lost wages.

## COUNT TWO – PRODUCT LIABILITY

18. All of the allegations contained in the previous paragraphs are re-alleged herein.

19. The products and/or materials to which Dean Dahlin was exposed were designed, produced, manufactured, marketed, sold and/or otherwise put into the stream of commerce by Defendants, and were used for their intended purpose.

20. Plaintiff would show that Defendants sold the products, the products were defective, and this defect rendered the products unreasonably dangerous. The products were expected to and did reach Dean Dahlin without substantial change in their condition.

21. Plaintiff would further show that the products were inherently dangerous, defectively designed, inspected, tested, manufactured, or otherwise defective and Defendants failed to give the users adequate warnings or instructions concerning product dangers that were known or should have been known to the Defendants.

22. The defective condition of Defendants' products and failures to warn on the part of Defendants rendered such products unreasonably dangerous at the time they left the hands of Defendants and were the proximate cause of Dean Dahlin's illness and death and the damages sustained by Plaintiff, including but not limited to:

    a. Prior to his death, Dean Dahlin suffered great physical pain and mental anguish;

    b. Prior to his death, Dean Dahlin incurred hospital and/or medical and/or pharmaceutical and/or other expenses;

    c. Prior to his death, Dean Dahlin suffered physical impairment;

    d. Prior to his death, Dean Dahlin suffered permanent partial disability;

    e. Prior to his death, Dean Dahlin required medical monitoring and required domestic help and nursing care due to his disabilities;

    f. Prior to onset of his symptoms, Dean Dahlin was extremely active and participated in numerous hobbies and activities, and, as a result of his illnesses, he was prevented from engaging in all of said activities which were normal to him prior to developing symptoms from his disease; and,

g.  Loss of earning capacity and lost wages.

## COUNT THREE – WRONGFUL DEATH

23. All of the allegations contained in the previous paragraphs are re-alleged herein.

24. Dean Dahlin was diagnosed with myelodysplastic syndrome in June 2012 and died from the disease in June 2013.

25. The Defendants' wrongful and and/or negligence, as alleged above, directly and proximately caused the death of Dean Dahlin.

26. As a direct and proximate result of Defendants' wrongful and negligent acts, Plaintiff has incurred the following general and special damages including, but not limited to, all cognizable damages for wrongful death claims, that Plaintiff sustained both in her individual capacity and as personal representatives of the Estate of Dean Dahlin:

    a.  Reasonable and necessary medical expenses incurred by Dean Dahlin prior to his death;

    b.  Dean Dahlin's lost earning capacity;

    c.  The conscious physical pain and suffering sustained by Dean Dahlin prior to his death;

    d.  The physical impairment suffered by Dean Dahlin prior to his death;

    e.  The disfigurement suffered by Dean Dahlin prior to his death

    f.  The mental anguish sustained by Dean Dahlin prior to his death;

    g.  Reasonable funeral and burial expenses incurred by Plaintiff and the Estate of Dean Dahlin;

    h.  Loss of Dean Dahlin's spousal support;

    i.  Loss of Dean Dahlin's support to his children;

    j.    The mental anguish suffered by Plaintiffs as a consequence of the last illnesses and death of Dean Dahlin;

    k.    Punitive and exemplary damages as allowed by law to punish Defendants for proximately causing Dean Dahlin's untimely death;

    l.    Prejudgment interest on all elements of damages as allowed by law; and,

    m.    Any other actual, compensatory, punitive and exemplary damages recoverable pursuant to the wrongful death and survival act as set out by Section 633.336 of the Iowa Code.

## COUNT FOUR – LOSS OF CONSORTIUM

27.    At all times material hereto, the Plaintiff, Cheri Dahlin and Dean Dahlin were husband and wife.

28.    As a direct and proximate result of Defendants' wrongful and negligence acts and/or omissions, Dean Dahlin's family, including Cheri Dahlin, sustained a multitude of injuries, including but not limited to:

    a.    Loss of consortium of her husband, Dean Dahlin;

    b.    Witnessing the conscious physical pain and suffering sustained by Dean Dahlin prior to his death;

    c.    Witnessing the mental anguish sustained by Dean Dahlin prior to his death;

    d.    Witnessing the physical impairment suffered by Dean Dahlin prior to his death;

    e.    Witnessing the disfigurement suffered by Dean Dahlin prior to his death;

    f.    Reasonable funeral and burial expenses incurred by the Plaintiffs and the Dean Dahlin Estate;

    g.    The mental anguish suffered by Plaintiffs as a consequence of the last illnesses and death of Dean Dahlin;

    h.    Punitive and exemplary damages as allowed by law to punish Defendants for proximately causing Dean Dahlin's untimely death;

  i.  Prejudgment interest on all elements of damages as allowed by law; and

  j.  Loss of inheritance.

## COUNT FIVE - PUNITIVE DAMAGES/MALICIOUS ACTS

29. All of the allegations contained in the previous paragraphs are re-alleged herein.

30. The actions and inactions of all the Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the illness and damages to Plaintiff.

31. More specifically, Defendants, or alternatively the employees or agents of Defendants, and their predecessors-in-interest, consciously and/or deliberately engaged in fraud, wantonness and/or malice with regard to Mr. Dahlin. Defendants had actual awareness of the extreme degree of risk associated with exposure to the benzene and benzene-containing products they utilized, manufactured, processed, and/or distributed, and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Mr. Dahlin by failing to act to minimize or eliminate these risks. Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiff.

32. Plaintiff will show that the injuries and resulting damages were directly and proximately caused by the fraud, malice, willful acts and/or omissions, or gross neglect of the Defendants herein, their agents, servants, employees, managers, superintendents, supervisors and officers. Plaintiff will further show that if each of the acts of negligence, alleged by Plaintiff did not independently constitute fraud, malice, willful acts and/or omissions, or gross neglect then certainly all of the said acts or omissions combined and in the aggregate. constituted fraud,

malice, willful acts and/or omissions, or gross neglect and proximately caused Plaintiff's damages. Viewed objectively from the standpoint of these Defendants, the acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which these Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Thus, Plaintiff requests exemplary damages in an amount in excess of the jurisdictional limits of this Court.

33. Such acts or omissions of negligence are also acts of gross negligence, premises liability, actual or legal malice, intentional tort, and/or strict products liability, and were a proximate and producing cause of Plaintiffs' injuries and damages.

## JURY DEMAND

34. Plaintiff requests a jury trial.

## CONCLUSION

WHEREFORE, Plaintiff, Cheri Dahlin, individually and as Administrator of the Estate of Dean Dahlin, prays this Court enter Judgment against Defendants for damages as sought herein together with interest thereon at the legal rate, costs of court, and for other such additional and further relief, special and general, at law and in equity, which Plaintiff shows just and proper in accordance with the law.

Submitted,

By: /s/ signature

GALLAGHER MILLAGE & GALLAGHER, PLC
Robert S. Gallagher
Iowa Bar No. 002641
3870 Middle Road
Bettendorf, Iowa 52722
(563) 355-5303
(563) 388-9240 (fax)
rgallagherjr@gmglawfirm.com

and

**SHRADER & ASSOCIATES, L.L.P.**
Keith E. Patton – *subject to admission pro hac vice*
Texas Bar No. 24032821
David J. Baluk – *subject to admission pro hac vice*
Texas Bar No. 24078186
3900 Essex Lane, Suite 390
Houston, Texas 77027
(713) 782-0000
(713) 571-9605 (fax)
keith@shraderlaw.com
david@shraderlaw.com

**COUNSEL FOR PLAINTIFFS**

STATE OF IOWA )
) ss.
COUNTY OF SCOTT )

I, Cheri Dahlin, an adult individual, being first duly sworn on oath, depose and state that I am the plaintiff named in the foregoing Petition at Law, that I have read the same, know the contents thereof and that the statements therein contained are true and correct as I verily believe.

_____
Cheri Dahlin

Subscribed and sworn to before me this 4 day of June, 2014.

RENEE O'BARR
Commission Number 782313
My Commission Expires
January 24, 2017

Notary Public in and for the State of Iowa

STATE OF IOWA )
              ) ss.
COUNTY OF SCOTT )

I, Cheri Dahlin, as administrator of the Estate of Dean Dahlin, being first duly sworn on oath, depose and state that I am a Plaintiff named in the foregoing Petition, that I have read the same, know the contents thereof and that the statements therein contained are true and correct as I verily believe.

_____
Cheri Dahlin, Administrator

Subscribed and sworn to before me this 4 day of June, 2014.

Notary Public in and for the State of Iowa

COMPLAINT

RENEE O'BARR
Commission Number 782313
My Commission Expires
January 24, 2017

PAGE 13