IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| CHERI DAHLIN, Individually and on Behalf of the Estate of Dean Dahlin, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> ARCHER-DANIELS-MIDLAND COMPANY; LYONDELL CHEMICAL COMPANY; EQUISTAR CHEMICALS, LP; and EQUISTAR GP, LLC; <br><br> Defendants. | Case No. 3:14-cv-00085-SMR-HCA <br><br><br><br><br><br><br><br> ORDER GRANTING CROSS-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| ARCHER-DANIELS-MIDLAND COMPANY, <br><br> Cross-Claimant, <br><br> v. <br><br> LYONDELL CHEMICAL COMPANY; EQUISTAR CHEMICALS, LP; and EQUISTAR GP, LLC; <br><br> Cross-Defendants. | |

Before the Court is Cross-Defendants Lyondell Chemical Company; Equistar Chemicals, LP; and Equistar GP, LLC's (collectively "Cross-Defendants") Motion for Partial Summary Judgment on Archer-Daniels-Midland Company's Cross Claims ("Motion"). [ECF No. 189]. Cross-Defendants argue Cross-Claimant Archer-Daniels-Midland Company's ("Cross-Claimant") crossclaims for indemnification were discharged in Cross-Defendants' bankruptcy. Cross-Claimant responded, [ECF No. 220], and Cross-Defendants replied, [ECF No. 221]. Oral

argument was held January 28, 2016. [ECF No. 266]. The matter is fully submitted. For the reasons set forth below, the Court grants Cross-Defendants' Motion.

I. FACTS

Plaintiff Cheri Dahlin alleges in her Third Amended Complaint that her husband, Dean Dahlin, developed acute myeloid leukemia and died as a result of occupational benzene exposure. [ECF No. 153]. Dean worked as a commercial truck driver for Dahlen Transport, Inc. from approximately 1990 to 1992 and for A&R Logistics, Inc. from approximately 1992 to 1995. *Id.* ¶ 14. Dean's occupational duties included loading, transporting, and unloading Debutanized Aromatic Concentrate ("DAC"), which contains the carcinogen benzene. Dean hauled DAC from a petrochemical facility ("the Complex") in Clinton, Iowa, to a municipal dock storage facility ("the Dock") in South Clinton, Iowa. Plaintiff alleges the Complex was owned and/or operated by Cross-Defendants[1] and the Dock was owned and/or operated by Cross-Claimant. *Id.* ¶ 14, 16.

Cross-Claimant entered into an agreement ("Lease") with the City of Clinton for a twenty-year lease of the Dock beginning January 1, 1993. [ECF No. 63-1 ¶ 2]. Cross-Claimant was to operate the Dock "as a public facility and to provide and furnish to all river carriers . . . services for loading, unloading or transferring of materials and commodities." [ECF No. 63-1 at 2]. The Lease further stated:

---

[1] During the time of Dean's employment, the Complex was operated by ACC Chemical Company, Quantum Chemical Corporation, and Getty Chemical Company through their joint venture Chemplex Company, Inc. [ECF No. 153 ¶ 15]. Cross-Defendants are the successors in interest to those owners. [ECF No. 153 ¶ 16].

> Quantum Chemical Corporation[, a predecessor in interest to Cross-Defendants,] currently utilizes the municipal dock for the shipment of DAC. A large tank and unloading facilities currently exist at the dock for these purposes. Quantum has an agreement with the current dock operator for the transferring of said material, which agreement will expire December 31, 1992. It will be necessary for [Cross-Claimant] to enter into an agreement with Quantum to continue providing said services, provided reasonable terms can be negotiated to compensate and protect [Cross-Claimant].

*Id.* at 3.

In accordance with the Lease, Cross-Claimant entered into a "Storage and Product Handling Agreement" ("Agreement") with Quantum Chemical Corporation ("Quantum").[2] [ECF No. 63-2]. This Agreement became effective January 1, 1993, and the initial term ended December 31, 1996. *Id.* at 1–2. Under the Agreement, Cross-Claimant agreed to operate a 630,000-gallon tank, which belonged to the City of Clinton, exclusively for Quantum's storage of DAC. *Id.* at 2.

The Agreement required Quantum "to provide liability insurance covering personal injury for at least $2,000,000 per person, $2,000,000 per occurrence and property damage for at least $2,000,000." *Id.* at 8. Quantum was to list Cross-Claimant as an additional insured under these policies. *Id.* The Agreement also contained a reciprocal indemnification provision: "Each party agrees to hold the other party harmless from and to indemnify the other party against any claim, expense, or loss to which the other party may be subject by reason of any failure by the

---

[2] The ownership of the Complex has transitioned multiple times. In September 1993, Quantum Chemical Corporation was acquired by Hanson, PLC, and the name was changed to Quantum Chemical Company. In 1996, the name changed back to Quantum Chemical Corporation and then, in March 1997, the name changed to Millennium Petrochemicals Inc. The Complex first came to be owned by Cross-Defendants in October 1997, when Lyondell Chemical Company formed a joint venture with Millennium Petrochemicals Inc., called Equistar Chemicals, LP. Equistar Chemicals, LP took ownership of the Complex. In 1998, Occidental Chemical Corporation became a third partner in Equistar Chemicals, LP. Lyondell Chemical Company bought out Occidental Chemical Corporation in 2002. In 2004, Lyondell Chemical Company acquired Millennium Petrochemicals Inc. and Equistar Chemicals, LP became a wholly-owned subsidiary of Lyondell Chemical Company. Equistar Chemicals, LP and Equistar GP, LLC are subsidiaries of Lyondell Chemical Company.

indemnifying party to obtain or modify its insurance coverage to comply with [the Agreement]."

*Id.* at 8–9. On top of this, Quantum agreed to

> indemnify, hold harmless and defend [Cross-Claimant] from and against any and all losses, damages, claims, suits or actions, judgments, cleanup, environmental response actions or costs, costs and expenses (including reasonable attorney's fees) which arise or are claimed to arise out of any injury, sickness or death to persons and [Cross-Claimant], damages or loss to property caused by, arising from, or in any manner connected with any act or omission by [Quantum or Cross-Claimant's] handling of [DAC], except to the extent as proven by a court of competent jurisdiction that such occurrence was caused by [Cross-Claimant's] sole negligence.

*Id.* at 10–11.

Cross-Claimant and Quantum did not renew the Agreement at the conclusion of its term. Cross-Claimant informed Quantum that it was unwilling to extend the Agreement and instead suggested Quantum negotiate directly with the City of Clinton. [ECF No. 189-4 at 51]. Quantum did so and contracted with the City of Clinton to use the Dock from March 1, 1997, through December 31, 2012. *Id.* Though Cross-Claimant was not a party to this contract, it was protected by it: the last paragraph of Quantum's contract with the City of Clinton contained the same indemnification provision as had the Agreement, requiring Quantum to indemnify Cross-Claimant. *Id.* at 64.

Quantum changed its name to Millennium Petrochemicals Inc. in March 1997. In October 1997, Millennium Petrochemicals Inc. formed a partnership with Lyondell Chemical Company named Equistar Chemicals, LP. On November 18, 1997, Millennium Petrochemicals Inc. wrote to the Clinton Dock Board requesting permission to assign the lease to the newly formed Equistar Chemicals, LP. *Id.* at 68. The City of Clinton adopted a resolution consenting to the assignment on November 25, 1997. *Id.* at 70. The resolution stated "consent is hereby given to the assignment

of the lease and agreement of the DAC Facilities from Quantum Chemical Corporation, now Millennium Petrochemicals Inc., to Equistar Chemicals, LP." *Id.*[3]

On January 6, 2009, Lyondell and Equistar Chemicals, LP[4] (along with certain of their corporate affiliates) filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[5] The Bankruptcy Court established June 30, 2009, as the general deadline for claimants to file proofs of claim against any of the debtors (the "Bar Date"). Cross-Defendants sent Cross-Claimant written notice of the bankruptcy and the Bar Date ("Notice") via first class mail. [ECF No. 189-6 at 1, 25–26]. The Notice listed Millennium Petrochemicals Inc. and Equistar Chemicals, LP as debtors seeking bankruptcy—but not Quantum Chemical Corporation. [ECF No. 189-5 at 12–15].

Cross-Claimant did not file a claim in Cross-Defendants' bankruptcy. [ECF No. 189-4 at 75]. On April 23, 2010, the Bankruptcy Court entered an order confirming the Reorganization Plan. The Bankruptcy Court discharged and terminated all existing debts and claims of any kind against any of the debtors, or any of their assets or properties, and permanently enjoined and forbade pursuit of such discharged claims.

---

[3] The documents discussed in this paragraph were provided by Cross-Claimant to Cross-Defendants in discovery. [ECF No. 189-1 at 12]. Cross-Claimant obtained these documents from the City of Clinton in 2014 when Cross-Claimant's employees visited the City of Clinton's offices to conduct research related to this lawsuit. [ECF No. 220-2 at 82–83].

[4] Equistar GP, LLC was created pursuant to the bankruptcy Reorganization Plan.

[5] Their bankruptcy cases were jointly administered under the caption *In re Lyondell Chemical Co., et al.*, Case No. 09-10023 (REG).

## II. PROCEDURAL HISTORY

Plaintiff has filed suit alleging theories of negligence, product liability, wrongful death, loss of consortium, and punitive damages/malicious acts. [ECF No. 153]. Plaintiff levels these claims against all of the named Defendants. *Id.*

Cross-Claimant subsequently filed crossclaims against Cross-Defendants. [ECF Nos. 63 (against Equistar Chemicals, LP); 64 (against Equistar GP, LLC); 65 (against Lyondell Chemical Company)].[6] Based on the terms of the Agreement, Cross-Claimant's crossclaim petition asserts two counts. Under Count I (Contribution/Indemnity – Breach of Contract – Liability Insurance), Cross-Claimant asserts Cross-Defendants failed to provide the liability insurance required by the Agreement. [ECF No. 63 ¶ 14]. Cross-Claimant argues Plaintiff's claims would have been covered by personal-injury insurance, had Cross-Defendants properly provided insurance. *Id.* ¶ 15. Under Count II (Contractual Indemnification), Cross-Claimant asks to be indemnified by Cross-Defendants for any judgment and all costs Cross-Claimant has incurred associated with Plaintiff's claims. *Id.* at 6–7.

Cross-Defendants have now moved for summary judgment on both of Cross-Claimant's crossclaims. [ECF No. 189]. Cross-Defendants argue Cross-Claimant's claims were discharged in Cross-Defendants' bankruptcy.

## III. ANALYSIS

### A. *Summary Judgment Standards*

Familiar standards govern summary judgment motions. "Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

---

[6] Cross-Claimant's three crossclaim petitions are identical except for the name of the cross-defendant. For ease, the Court has cited only to the first crossclaim petition, [ECF No. 63], in discussing the facts.

of law." *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014); Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.'" *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quoting *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011)). The moving party bears the burden of demonstrating there are no genuine issues of material fact. *Gibson v. Geithner*, 776 F.3d 536, 539 (8th Cir. 2015). Courts must view "'the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record.'" *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)).

### B. Cross-Defendants Failed to Comply with Local Rules

The Local Rules explain the procedures to be followed in moving for summary judgment. The last unnumbered paragraph of Local Rule 56.a directs a movant to file a statement of material facts, with each individual statement of fact "supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix." The Local Rules further state, "[a] document included in an appendix must be authenticated properly, by affidavit or in some other lawful manner, or it may not be considered by the court in ruling on a motion for summary judgment." L.R. 56.e.

Although Cross-Claimant is correct that Cross-Defendants have not complied with Local Rules 56.a or 56.e, the Court declines to strike Cross-Defendants' Motion or appendix. *See Maytag Corp. v. United Auto. Workers*, No. 4:08-CV-002910-JEG, 2010 WL 5825425, at *6 (S.D. Iowa Nov. 10, 2010) (unpublished) ("[W]hether to consider a document that has not been properly authenticated is a decision left to the discretion of the Court."). While Cross-Defendants do not

include page citations in their statement of material facts, [ECF No. 189-2 at 3], they do detail the facts supporting their Motion and cite to specific pages of their appendix in their supporting brief, [ECF No. 189-1]. Cross-Defendants' arguments and the facts supporting their arguments are readily discernible. [*Cf.* ECF No. 229 (finding Cross-Defendants' motion for summary judgment ineffectual due to dearth of factual citation)]. Cross-Claimant has not alleged any of Cross-Defendants' appendix materials are falsified, and the Court sees no indication that this is the case. The Court thus proceeds to consider the merits of Cross-Defendants' Motion but admonishes Cross-Defendants to review the local rules and abide by them.

### C. Cross-Claimant Possessed a Contingent Claim Subject to Bankruptcy Discharge

The Court must first determine if Cross-Claimant had a "claim" that was subject to discharge in Cross-Defendants' bankruptcy. Under 11 U.S.C. § 1141(d)(1)(A), the confirmation of a bankruptcy plan of reorganization "discharges the debtor from any debt that arose before the date of such confirmation." A "debt" is defined as "liability on a claim," *id.* § 101(12) and a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A) (emphasis added). "A contingent claim is '[a] claim that has not yet accrued and is dependent on some future event that may never happen.'" *Boston & Maine Corp. v. Massachusetts Bay Transp. Auth.*, 587 F.3d 89, 100 (1st Cir. 2009) (quoting *Black's Law Dictionary* 282 (9th ed. 2009)); *see also McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 (8th Cir. 1996) ("It is clear that the definition of 'claim,' as stated in the Code, is broad enough to encompass an obligation on which a civil action would be premature . . . ."). Failure to file a timely proof of claim will result in the claim against the debtor being discharged when the bankruptcy court confirms the debtor's reorganization plan. 11 U.S.C. § 1141(d)(1).

Courts "have almost universally held that a contractual right to indemnification is a prepetition contingent claim if the contract was executed before the bankruptcy filing." *In re Huffy Corp.*, 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010) (collecting cases). Cross-Claimant does not argue otherwise. The Court concludes Cross-Claimant's claims for indemnification based on the 1993 Agreement were contingent claims under 11 U.S.C. § 101(5)(A)—and were subject to discharge in Cross-Defendants' 2010 bankruptcy.

### D. Cross-Defendants Provided Legally Sufficient Notice to Cross-Claimant

The second phase of the Court's bankruptcy-discharge analysis is determining whether Cross-Claimant received the prerequisite notice of Cross-Defendants' bankruptcy. *See In re Grossman's Inc.*, 607 F.3d 114, 127–28 (3d Cir. 2010) (finding plaintiff had a "claim" under the Bankruptcy Code but recognizing necessity of deciding whether discharge "would comport with due process, which may invite inquiry into the adequacy of the notice of the claims bar date"). "The operation of the Bankruptcy Code, including its discharge provisions, is subject to due process constraints." *Sanchez v. Nw. Airlines, Inc.*, 659 F.3d 671, 675 (8th Cir. 2011). "According to a landmark Supreme Court case, '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Thus, "[b]efore a pre-petition or pre-confirmation claim can be discharged under the applicable provisions of the Bankruptcy Code, a debtor's creditors must be afforded notice of the debtor's bankruptcy case, as well as the deadline for asserting any pre-petition claims against the debtor." *Sanchez*, 659 F.3d at 675 (internal quotation marks and alterations omitted). "Absent such notice, creditors lack 'the opportunity to participate in a meaningful way in the course of bankruptcy proceedings.'" *Id.* (quoting *In re Hairopoulos*,

118 F.3d 1240, 1244 (8th Cir. 1997)). Inadequate notice therefore "precludes discharge of a claim in bankruptcy." *Chemetron Corp v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *see also Sanchez*, 659 F.3d at 680 (concluding claim was not discharged because claimant received insufficient notice).

Here, Cross-Defendants provided Cross-Claimant with actual notice via first class mail. *See Arkansas Motor Coaches, Ltd., Inc. v. C.I.R.*, 198 F.2d 189, 191 (8th Cir. 1952) ("Where, as in this case, [the] matter is transmitted by the United States mails, properly addressed and postage fully prepaid, there is a strong presumption that it will be received by the addressee in the ordinary course of the mails."). Cross-Claimant does not argue it did not receive the Notice or did not know that Quantum's debts would be discharged by the bankruptcy.[7] It should go without saying that Cross-Claimant cannot create a fact dispute without disputing the material facts. The Court therefore finds the Notice mailed to Cross-Claimant was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *cf. id.* (noting "[p]ersonal

---

[7] In response to Cross-Defendants' assertion they sent Cross-Claimant actual notice of the bankruptcy and Bar Date, Cross-Claimant "admits that it is listed in the address portion of [Cross-Defendants' exhibit]" and does not deny Cross-Defendants sent it actual notice. [ECF No. 220-1 at 4]. At the hearing on this Motion, counsel for Cross-Claimant stated Cross-Claimant cannot confirm nor deny receiving the Notice.

Cross-Claimant does not directly respond to Cross-Defendants' statement that Cross-Claimant had knowledge of the ownership history of the Complex, "from Quantum Chemical Corporation to Millennium Petrochemicals, Inc., to Equistar Chemicals, LP." *Id.* Cross-Claimant denies this statement, and then explains that it obtained the lease assignment documents sent to the Clinton Dock Board from the City of Clinton—not from Cross-Claimant's own files. *Id.* Cross-Claimant's record citation supports its statement regarding the lease assignment documents, but does not provide any authority for Cross-Claimant's denial that it had knowledge of the ownership history of the Complex. Cross-Claimant's responses to these two questions are insufficient to create a fact dispute. *Cf.* L.R. 56.b (response to statement of material fact must be supported by references to the record and "[t]he failure to respond, with appropriate citations . . . constitutes an admission of that fact").

service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding"). It therefore satisfied Cross-Claimant's due process rights.

The omission of Quantum from the Notice does not render the Notice violative of due process. The Notice Cross-Defendants provided Cross-Claimant did not list Quantum as a debtor seeking bankruptcy, but it did list other companies that Cross-Claimant had reason to know were successors to Quantum—including Millennium Petrochemicals Inc. and Equistar Chemicals, LP. Cross-Claimant's Lease with the City of Clinton continued until December 31, 2012, and Cross-Defendants' 1997 contract with the City of Clinton (to which Cross-Claimant was a third-party beneficiary) was also scheduled to elapse on December 31, 2012. Cross-Defendants have supplied documentation indicating Cross-Claimant knew of the changing ownership of Quantum because this information was communicated to the City Dock Board. [ECF No. 189-4 at 68, 70]. Cross-Claimant and Cross-Defendants both had significant operations at the Dock and it would be unreasonable to infer Cross-Claimant did not know of Defendant's name changes—especially when Cross-Claimant had indemnification rights under an active contract that was assigned from Quantum /Millennium Petrochemicals Inc. to Equistar Chemicals, LP. Although Cross-Claimant, as the nonmovant, is entitled to all reasonable inferences that can be drawn from the record, this does not include "unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). At a minimum, on these facts the actual notice Cross-Claimant received placed Cross-Claimant on inquiry notice. *See In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1431 (9th Cir. 1990) (finding claimant's due process rights satisfied when claimant "received information about the bankruptcy proceedings that was sufficient to put it on inquiry notice"); *cf. Hairopoulos*, 118 F.3d at 1245 (noting "in some circumstances a creditor may be discharged because it failed to properly further inquire once it had some notice of bankruptcy proceedings" but finding notice insufficient).

The Court acknowledges that it found Cross-Defendants' notice by publication deficient for failing to list Quantum (among others) as a debtor seeking bankruptcy, [ECF No. 175], but the circumstances here are quite different. Here, the Court is presented with a sophisticated business that 1) received actual notice; 2) was a third-party beneficiary to a contract that was assigned to Equistar Chemicals, LP; and 3) continued to conduct large-scale operations on the Dock alongside Cross-Defendants after Quantum changed its name. In comparison, Dean Dahlin is an individual 1) who received notice by publication, 2) whose claim is founded on tort, and 3) who (as far as the Court is aware) had no further dealings with Cross-Defendants after his employment ended.

Cross-Defendants have thus established both that Cross-Claimant possessed a claim subject to discharge and that Cross-Claimant received adequate notice of the bankruptcy. Cross-Claimant's crossclaims were therefore discharged in Cross-Defendants' bankruptcy and Cross-Claimant is barred from asserting them now. 11 U.S.C. § 1141(d)(1)(A).

Cross-Claimant's other arguments to the contrary miss the mark. The Court is unpersuaded by Cross-Claimant's perfunctory argument (bereft of legal authority) that Cross-Defendants failed to provide the Court with a sufficient record by neglecting to include the Agreement in their appendix. [*See* ECF No. 220 at 4]. The Agreement between Cross-Claimant and Cross-Defendants is included in Cross-Claimant's petition. [ECF No. 63-2]; *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Further, it is of no legal significance that the Agreement between Cross-Claimant and Cross-Defendants is not referenced in Cross-Defendants' bankruptcy documents. Finally, it matters not whether the Agreement was an executory contract subject to discharge under 11 U.S.C. § 365. Regardless of whether the Agreement was executory, Cross-Claimant's indemnifications claims were subject to discharge under 11 U.S.C. § 1141—and were in fact discharged.

## IV.  CONCLUSION

Cross-Defendants Lyondell Chemical Company; Equistar Chemicals, LP; and Equistar GP, LLC's Motion for Partial Summary Judgment on Archer-Daniels-Midland Company's Cross Claims, [ECF No. 189], is GRANTED.  Cross-Claimant Archer-Daniels-Midland's Cross-Claims against Cross-Defendants Lyondell Chemical Company; Equistar Chemicals, LP; and Equistar GP, LLC, [ECF Nos. 63–65], are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 4th day of February, 2016.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT