# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| CHERI DAHLIN, Individually and on Behalf of the Estate of Dean Dahlin, Deceased, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C. A. 3:14-CV-00085-CMR-HCA |
| ARCHER-DANIELS-MIDLAND COMPANY, ET AL., | § § § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT, RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PUNITIVE DAMAGES AND OTHER GROUNDS, ALTERNATIVELY, MOTION FOR NEW TRIAL, AND REQUEST FOR ORAL ARGUMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................ 2

III.    ARGUMENT AND AUTHORITIES ..................................................................... 2

    A.    The Court should enter judgment that Plaintiff takes nothing based on the jury's "No" answer to Question One in the verdict. ..................................... 3

        1.    The jury's answers to Questions Four through Sixteen are mere surplusage given its "No" answer to Question One. ..................... 4

        2.    The jury's answers to Questions Four through Seven do not impute liability to Defendants. ............................................................. 6

    B.    Regardless of the jury's verdict, the Court should enter judgment that Plaintiff takes nothing from Defendants as a matter of law. ............................ 9

        1.    Defendants proved as a matter of law that Dean Dahlin knew about the risk posed by exposure to benzene. ........................................ 9

        2.    Defendants proved as a matter of law that they warned Dean Dahlin about the risk posed by exposure to benzene. ........................... 10

        3.    Even if Defendants had not warned Dean Dahlin, Plaintiff presented no evidence that Dean Dahlin would have heeded a warning had it been given. ...................................................................... 11

    C.    Plaintiff failed to present legally sufficient evidence that Defendants willfully or wantonly disregarded the rights or safety of another. .................. 12

    D.    Alternatively, Defendants are entitled to a new trial. ................................... 15

        1.    The jury's answers to the Court's special written findings or written questions are irreconcilably inconsistent. ............................... 15

        2.    The jury verdict forms submitted by the Court were erroneous. .................................................................................................. 16

        3.    The Court erred by admitting evidence of the Clinton Complex's designation as a Superfund Site. ....................................... 19

        4.    The jury's verdict was against the great weight of the evidence. ........ 20

IV.    PRAYER ................................................................................................................ 23

Certificate of Service ..................................................................................................... 23

Defendants Lyondell Chemical Company, Equistar Chemicals, LP, and Equistar GP, LLC (collectively "Lyondell" or "Defendants") request that the Court enter judgment that Plaintiff Cheri Dahlin, individually and on behalf of the Estate of Dean Dahlin (collectively, "Plaintiff" or "Dahlin") takes nothing from Defendants.  Defendants also renew their motion for judgment as a matter of law on punitive damages because Plaintiff presented no evidence at trial to support such an award.  Alternatively, Defendants request that the Court grant a new trial on several grounds.

## I.      INTRODUCTION

Lyondell moves for entry of judgment that Plaintiff takes nothing from Defendants because the jury answered "No" to Question One of the verdict form.

Alternatively, the Court should enter a judgment that Plaintiff takes nothing because (1) Defendants proved as a matter of law that Dean Dahlin knew about the risks posed by exposure to benzene; (2) Defendants proved as a matter of law that they warned Dean Dahlin about the risks posed by exposure to benzene; or (3) assuming Defendants did not warn Dean Dahlin about the risks posed by exposure to benzene, Plaintiff failed to present legally sufficient evidence from which the jury could conclude that Dean Dahlin would have heeded a warning had it been given.

If the Court rejects the preceding bases for judgment as a matter of law, the Court should enter judgment as a matter of law that Plaintiff takes no punitive damages because Plaintiff failed to present legally sufficient evidence that Defendants willfully or wantonly disregarded the rights or safety of Dean Dahlin or anyone else.

Further, and in alternative to the preceding arguments, Defendants are entitled to a new trial because (1) the jury's verdict is irreconcilably inconsistent; (2) the Court erroneously instructed the jury; (3) the Court erred in admitting evidence of the Environmental Protection

Agency ("EPA") Record of Decision at trial; or (4) the jury's verdict was against the great weight of the evidence.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff sued Defendants alleging that Dean Dahlin's exposure to benzene at the Clinton Complex from 1990 to 1995 caused his death from cancer in 2013.  (3rd Am. Compl. ¶¶ 14, 18, ECF No. 153.)   On September 29, 2015, the Court denied Defendants' motion for summary judgment that Plaintiff's claims were discharged in bankruptcy.  (ECF No. 175.)  On February 4, 2016, the Court denied Defendants' motions for summary judgment on causation and partial summary judgment on punitive damages.  (ECF Nos. 229 & 230.)   The parties proceeded to trial on March 28.

Defendants moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiff's case-in-chief and reurged their motion regarding punitive damages at the close of all of the evidence.  (Ex. D, 3/31/16 Tr. 204–210; Ex. E, 4/01/16 Tr. 200–208.)[1]  On April 5, the jury returned a verdict in which it found Defendants not liable on Plaintiff's claims for negligence and products liability based on a failure to warn.  (ECF Nos. 289 & 290.)  The jury also purportedly found Defendants liable on Plaintiff's claim for premises liability.  (ECF Nos. 289 & 290.)  The jury purportedly awarded compensatory damages of $1,760,000 and punitive damages of $1,760,000.  (ECF Nos. 289 & 290.)  On April 5, the Court ordered that the parties file post-trial briefing before it entered judgment.   (ECF No. 288, 4/5/2016 Clerk's Court Minutes.)

## III.   ARGUMENT AND AUTHORITIES

Under Federal Rule 58(b)(2) the Court is to approve the form of the judgment to be entered for special verdicts or a general verdict with answers to written questions.

---

[1] All trial transcript citations are to the rough draft.  We do not have a certified copy of the trial transcript yet.

Additionally, pursuant to Federal Rule 50(b), a party may renew its motion for judgment as a matter of law after trial.  Based on the verdict returned by the jury or based on Defendants' reurged motions for judgment as a matter of law, the Court should enter judgment that Plaintiff takes nothing.  Alternatively, the Court should grant a new trial.

> **A.**    **The Court should enter judgment that Plaintiff takes nothing based on the jury's "No" answer to Question One in the verdict.**

Question One finds that Defendants were not negligent by (1) failing to warn Dean Dahlin about the product he was transporting or (2) failing to warn Dean Dahlin about the hazards from exposure to benzene at their premises.  Following a favorable finding on the threshold issue of Defendants' alleged negligence, the inquiry should be over—as Defendants argued both before and after the jury charge was submitted.  Questions Four through Seven, however, appear to find that Defendants were negligent in failing to warn Dean Dahlin about exposure to benzene at their premises—an apparent inconsistency.

When presented with an apparently inconsistent verdict, it is the duty of the Court to harmonize the answers, if it is possible under a fair reading of them.  *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963).  This must be done by interpretation if it is necessary.  *Id.*  "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."  *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962).

The Court should enter judgment that Plaintiff takes nothing based on the jury's "No" answer to Question One in the verdict because (1) the jury's answers to Questions Four through Sixteen are mere surplusage given its "No" answer to Question One; or alternatively, (2) the jury's answers to Questions Four through Seven may fairly be read not to impute liability

to Defendants.  In this way, the Court may resolve the apparent inconsistencies in the verdict and

enter judgment that Plaintiff takes nothing from Defendants.

> **1.   The jury's answers to Questions Four through Sixteen are mere surplusage given its "No" answer to Question One.**

An interrogatory may be disregarded if it is surplusage.  *See McCollum v. Stahl*,

579 F.2d 869 (4th Cir. 1978), *cert. denied*, 440 U.S. 912 (1979) (disregarding jury's award of

damages and second verdict based on jury's initial finding of no liability); *Ratigan v. New York*

*Cent. R. Co.*, 291 F.2d 548, 555 (2d Cir. 1961), *cert. denied*, 368 U.S. 891 (1961) (agreeing with

district judge that a jury's erroneous legal finding may be disregarded as surplusage in face of

countervailing factual findings in jury's verdict, especially if it is a special verdict).

Under Iowa law, premises liability is a specialized subset of negligence, which

defines the duties and obligations of landowners or occupiers of premises to those coming onto

or about the premises.  *See Koenig v. Koenig*, 766 N.W.2d 635, 643–46 (Iowa 2009).  Iowa has

followed other courts in abandoning strict, common-law distinctions in favor of ordinary

negligence principles within the context of premises liability.  *Id.*  At its core, premises liability

asks whether premises owners exercise ordinary care in the maintenance of their premises and

the protection of lawful visitors.  *Id.*  This is the same standard—ordinary care—applied outside

the context of ownership or occupancy of premises.  *See Bartlett v. Chebuhar*, 479 N.W.2d 321,

322 (Iowa 1992) ("[Iowa's] case law on negligence is succinctly summarized in a uniform civil

jury instruction as '. . . failure to use ordinary care.'").

Similarly, under Iowa law, a claim based on products liability for a failure to warn

is premised on negligence and not strict liability.  *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 289

(Iowa 1994).  As the Iowa Supreme Court explained, "[m]aintaining the distinction to justify

submission of failure to warn claims under both strict liability and negligence theories is a vain effort." *Id.* The crux of the inquiry should be whether a defendant exercised reasonable care.

The Court submitted questions to the jury based on Plaintiff's three "theories"— negligence, premises liability, and products liability. The questions dealing with premises liability and products liability, however, were duplicative of the Court's questions based on negligence. Indeed, those duplicative questions were exactly what the Iowa Supreme Court warned against. *Id.* Put differently, each "theory" should have been premised on negligence— that Defendants breached a duty of care to Plaintiff either as defined by their status as (1) owners of premises or (2) as manufacturers of products—but only the first theory actually did so.

Indeed, this is the very question posed by the Court in Question One. "Were the Defendants negligent with respect to either of the following: One, By failing to warn Dean Dahlin about the product he was transporting; or Two, By failing to warn Dean Dahlin about the hazards from exposure to benzene at their premises." The jury answered "No."

The jury's answer to Question One makes clear that Defendants were not negligent either as regards their duty as an owner of premises or as a manufacturer of products. According to the jury, Defendants did not (1) fail to warn Dean Dahlin about the product he was transporting or (2) fail to warn Dean Dahlin about the hazards from exposure to benzene at their premises. Consequently, the jury found that Defendants were not liable under Iowa law. The finding of non-liability in Question One is dispositive and renders the jury's answers to other, later questions in the verdict mere surplusage. *See McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978), *cert. denied*, 440 U.S. 912 (1979) (holding that resubmission to the jury of a purportedly inconsistent verdict was error after "an unequivocal finding of no wrongful conduct" by defendant); *see also Ratigan v. N. Y. Cent. R. Co.*, 291 F.2d 548, 555 (2d Cir. 1961), *cert. denied*,

368 U.S. 891 (1961) (disregarding later questions inconsistent with the jury's initial finding). Accordingly, the Court should enter judgment that Plaintiff takes nothing from Defendants.

> **2.      The jury's answers to Questions Four through Seven do not impute liability to Defendants.**

Under Iowa law, to prevail on a claim for premises liability, a plaintiff must prove that (1) the defendant knew or in the exercise of reasonable care should have known of a condition on the premises and that it involved an unreasonable risk of injury to a person in the plaintiff's position; (2) that the defendant knew or in the exercise of reasonable care should have known (a) the plaintiff would not discover the condition; or (b) the plaintiff would not realize the condition presented an unreasonable risk of injury; or (c) the plaintiff would not protect himself from the condition; (3) the defendant was negligent in failing to protect the plaintiff; (4) the negligence was a cause of the plaintiff's damage; and (5) the nature and extent of the damage. Iowa Civ. Jury Instructions 900.1 (2015); *see Koenig v. Koenig*, 766 N.W.2d 635, 645–46 (Iowa 2009); *Kragel v. Wal-Mart Stores, Inc*, 537 N.W.2d 699, 704 (Iowa 1995).

The Court's verdict form posed four questions specific to premises liability.  The first, Question Four, asked, "Did the Defendants know, or in the exercise of reasonable care should they have known, of a condition on the premises, specifically benzene exposure, and that it involved an unreasonable risk of injury to a person in Dean Dahlin's position?"  The jury answered, "Yes."  The second question, Question Five, asked, "Did the Defendants know, or in the exercise of reasonable care should they have known: One, Dean Dahlin would not discover the condition; or Two, Dean Dahlin would not realize the condition presented an unreasonable risk of injury; or Three Dean Dahlin would not protect himself from the condition."  The jury answered, "Yes."  The third question, Question Six, asked, "Were the Defendants negligent in failing to warn Dean Dahlin about exposure to benzene on their premises?"  The jury answered,

"Yes."  The fourth question, Question Seven, asked, "Was the Defendants' failure to warn Dean Dahlin about benzene exposure on their premises a cause of Dean Dahlin's harm?"  The jury answered, "Yes."

Importantly, Question Six, which asks whether Defendants were negligent in failing to warn Dean Dahlin, asks only about benzene exposure.  It does not ask about a failure to warn about the hazards from benzene exposure—as Question One does.  Put differently, the jury found that Defendants did not warn Dean Dahlin about benzene exposure on their premises, not that the Defendants did not warn Dean Dahlin about the hazards or dangers that benzene exposure posed.  Given the jury's answer to Question One—that Defendants were not negligent in failing to warn Dean Dahlin about the hazards from benzene exposure at their premises—the Court may only reconcile the jury's answer to Question Six either by (1) concluding that Defendants warned Dean Dahlin about the hazards or dangers posed by benzene exposure, thereby discharging their duty to warn, even if they did not warn Dean Dahlin about the benzene exposure itself, or (2) by concluding that Question Six does not define exposure to benzene as being a hazardous or unreasonably dangerous condition, which would be necessary to trigger Defendants' duty to warn in the first place.

Warning about a dangerous condition is different from warning about the dangers posed by the condition.  If the dangers posed by a condition are obvious, then an owner need only warn of the condition.  However, if the condition is such that the danger is not obvious, it would seem that an owner or occupier of premises is obliged to warn about the specific dangers posed by the condition rather than the condition itself.  Otherwise, the person would not be adequately apprised of the danger and able to appreciate the risk he faces on the premises.  Defendants, at the very least, warned Dean Dahlin about the specific dangers posed by exposure

7

to benzene. The jury found as much in its answer to Question One. This warning adequately apprised Dean Dahlin of the risk he faced and discharged Defendants' duty to warn, even if Defendants did not warn him about the condition itself, exposure to benzene.[2]

Under Iowa law, an owner or occupier of premises need only warn about unreasonably dangerous or hazardous conditions on its premises. *See Koenig v. Koenig*, 766 N.W.2d 635, 646 (Iowa 2009). As written, Question Six only asks about exposure to benzene. It does not define exposure to benzene as an unreasonably dangerous condition or hazard. Accordingly, there is no jury finding that Defendants breached their duty of care to Dean Dahlin by failing to warn him about a condition on their premises that posed an unreasonable risk of injury. *See Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 873 (Iowa 1989) (upholding trial court's denial of motion for directed verdict and motion for judgment n.o.v. based on failure to warn about *dangerous condition* of stoop in premises liability case) (emphasis added). At most, the jury's answers to Questions Four through Seven would establish that Defendants failed to warn Dean Dahlin about exposure to benzene, which, without more, does not pose an unreasonable risk and, consequently, imposes no legal duty to warn on owners of premises—benzene exposure is not an unreasonable risk given a low exposure, especially when coupled with respirator use.

Because Defendants did not breach a duty of care to Dean Dahlin as owners or occupiers of premises, and because the jury returned "No" answers to Questions One and Ten, there is no affirmative finding of liability in the jury's verdict. Without an affirmative finding of liability, Plaintiff may not recover and the jury should not have answered Questions Twelve through Sixteen. *McCollum v. Stahl*, 579 F.2d 869, 871 (4th Cir. 1978), *cert. denied*, 440 U.S.

---

[2]   A finding that Defendants did not warn Dean Dahlin about exposure to benzene on their premises is frankly inconceivable in light of the posted danger signs on the premises, the requirement that drivers wear respirators, and other evidence in this case.

912 (1979) (entering judgment that plaintiff take nothing based on jury's finding of non-liability even though the jury awarded damages).

**B.     Regardless of the jury's verdict, the Court should enter judgment that Plaintiff takes nothing from Defendants as a matter of law.**

Pursuant to Federal Rule 50(b), a party may renew its motion for judgment as a matter of law after trial.  In deciding a post-verdict motion for judgment as a matter of law, a court views the evidence in the light most favorable to the prevailing party.  *Tilson v. Forrest City Police Dep't.*, 28 F.3d 802 (8th Cir. 1994).  The court should grant the motion if the evidence is such that, there can be but one reasonable conclusion.  *Id.*  When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate.  *Fought v. Hayes Wheels Intern. Inc.*, 101 F.3d 1275, 1277 (8th Cir. 1996) (citing *Sip-Top, Inc. v. Ecko Group, Inc.*, 86 F.3d 827, 830 (8th Cir. 1996)).  The question of whether there is sufficient evidence to support a jury verdict is a legal one.  *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324 (8th Cir. 1997).  Judgment as a matter of law is appropriate when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party.  *White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992).

**1.     Defendants proved as a matter of law that Dean Dahlin knew about the risk posed by exposure to benzene.**

Under Iowa law, Defendants had no duty to warn Dean Dahlin about known or obvious risks.  *Schnoor v. Deitchler*, 482 N.W.2d 913, 916–17 (Iowa 1992) (holding that a landowner owed no duty of care to plaintiff injured by auger because plaintiff knew of auger's condition and its dangers and assumed the risk by walking near it); *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 845 (Iowa 2005) ("It is well settled that generally '[t]he possessor of land . . . is not liable when the injuries sustained by a business invitee were caused by a known or obvious danger.'").  Known denotes knowledge of the existence of the condition as well as an

9

appreciation of the danger it involves.  *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990) (citing Restatement, 2d, Torts § 343A comment b.)

The evidence presented at trial established conclusively that Dean Dahlin knew about the risk posed by exposure to benzene at Defendants' premises.  Cheri Dahlin's sworn testimony was that Mr. Dahlin knew at the time he worked at Dahlen Transport, Inc. ("Dahlen Transport") that "he had to be careful around benzene because it is a chemical that can cause you to get cancer."  (Ex. B, 3/29/16 Tr. 131:15–132:5.)   Mr. Tubbs agreed with Mrs. Dahlin's testimony saying, "Yeah, we were all told we had to be careful with it."  (Ex. A, 3/28/16 172:18–22.)  There is no evidence to the contrary.  Plaintiff cannot credibly argue that benzene was an unknown risk to Dahlen Transport truck drivers, such as Mr. Dahlin, especially in light of Plaintiff's own testimony.

**2.   Defendants proved as a matter of law that they warned Dean Dahlin about the risk posed by exposure to benzene.**

Assuming Defendants owed Dean Dahlin a duty to warn him about a condition on their premises which posed an unreasonable risk of injury, Defendants discharged their duty by actually warning Dean Dahlin about the condition.  Under Iowa law, the possessor of land is under a duty to use ordinary care to keep the premises in a reasonably safe condition.  *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990).  The duty requires the possessor to use reasonable care to ascertain the actual condition of the premises, and it requires the possessor (1) to make the area reasonably safe *or* (2) to give a warning of the actual condition and risk involved.  *Id.* (emphasis added); *Greenwell v. Meredith Corp.*, 189 N.W.2d 901, 906 (Iowa 1971); *Mundy v. Warren*, 268 N.W.2d 213, 218 (Iowa 1978).  The evidence at trial conclusively established that Defendants did both.

First, Defendants made the area around the debutanized aromatic compound ("DAC") loading and unloading area reasonably safe using engineering controls such as pressurized trailers and dripless connections.  Further, it is undisputed that respirators were used by Dahlen Transport truck drivers as early as 1989 and that Mr. Dahlin wore a respirator—as required under Defendants' policies at the time.  (Ex. F, 4/04/16 Tr. 25:7–10.)  Confirmation that Defendants were successful in rendering the DAC loading and unloading area reasonably safe can be found in the personal air-monitoring data and the monthly "instantaneous" air monitoring done by Roy Wilson.  (Ex. C, 3/30/16 Tr. 231:11–242:10; 243:7–253:11.)

Second, the uncontroverted evidence adduced at trial proved that Defendants warned Dean Dahlin about benzene exposure on their premises.  Mr. Tubbs testified that he had seen a material safety data sheet ("MSDS") for DAC in 1985, five years before Mr. Dahlin began work.  (Ex. A, 3/28/16 Tr. 147:21–25.)  He went on to testify that "[e]very driver . . . they would have paid attention to the MSDS."  (*Id.* at 187:2–4.)  Further, there is uncontroverted testimony that danger signs were posted in the loading and unloading area before Mr. Dahlin's employment.  (*Id.* at 221:10–224:6; Ex. C, 3/30/16 Tr. 247:18–22; Defendants' Trial Exhibit 219 [Ex. I hereto])  The danger signs warned of the dangerous condition—benzene—and the risk involved—cancer.  (*Id.*)  Iowa law requires nothing more.  Therefore, Defendants are entitled to judgment as a matter of law.

### 3. Even if Defendants had not warned Dean Dahlin, Plaintiff presented no evidence that Dean Dahlin would have heeded a warning had it been given.

Under Iowa law, causation is an essential element for a premises liability claim. Iowa Civ. Jury Instructions 900.1 (2015); *see Koenig v. Koenig*, 766 N.W.2d 635, 645–46 (Iowa 2009); *see also Kragel v. Wal-Mart Stores, Inc*, 537 N.W.2d 699, 704 (Iowa 1995); *see also Thompson v. Kaczinski*, 774 N.W.2d 829, 836–39 (Iowa 2012).  In addition to other elements, a

plaintiff must prove that a defendant's negligence was the cause of the plaintiff's injuries.  When a defendant's alleged negligence is based on its failure to warn the plaintiff about a condition on its premises that posed an unreasonable risk of injury, the plaintiff must prove that the defendant's failure to warn him about the condition caused his injury.  *See Lovick v. Wil-Rich*, 588 N.W.2d 688, 700 (Iowa 1999) ("In the context of a failure to warn [products liability] claim, proximate cause can be established by showing a warning would have altered the plaintiff's conduct so as to avoid injury.");  *see also Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 946 (8th Cir. 1998) (affirming district court's grant of summary judgment for defendant on plaintiff's failure to warn claim because alleged breach of duty to warn was not proximate cause of injury in products liability case based on failure to warn).  That is, the plaintiff must prove that had he been warned, he would not have been injured.  Otherwise, by logical force, the absence of a warning was not a cause of the injury.

Plaintiff has failed to present any evidence that Defendants' alleged failure to warn Dean Dahlin was a cause of Plaintiff's injury insofar as Plaintiff presented no evidence from which a reasonable jury could conclude that Dean Dahlin would have heeded a warning had it been given.  Indeed, Dean Dahlin knew of the potential danger that benzene could cause cancer while working at Dahlen Transport.  In spite of this knowledge, Mr. Dahlin continued to work at Dahlen Transport, then worked for  A&R Transport Inc. where he continued to work around DAC, at least according to Cheri Dahlin.  Therefore, Plaintiff has presented no evidence that Mr. Dahlin would have actually heeded the warning.

### C.   Plaintiff failed to present legally sufficient evidence that Defendants willfully or wantonly disregarded the rights or safety of another.

Even if the Court rejects the preceding bases for judgment as a matter of law, the Court should enter judgment as a matter of law that Plaintiff takes no punitive damages because

Plaintiff failed to present legally sufficient evidence that Defendants willfully or wantonly disregarded the rights or safety of Dean Dahlin or anyone else.

Under Iowa law, Plaintiff must prove by a preponderance of clear, convincing, and satisfactory evidence, that the conduct of the defendant *from which the claim arose* constituted willful and wanton disregard for the rights or safety of another.  Iowa Code § 668A.1 (emphasis added).   "Willful and wanton," under the statute means that the defendant *intentionally* committed an unreasonable act in disregard of a known or obvious risk so as to make it highly probable that harm would follow; it is usually accompanied by a conscious indifference to the consequences.  *Schooley v. Orkin Extermination, Co., Inc.*, 502 F.3d 759, 766 (8th Cir. 2007) (citing *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990)) (emphasis added).  Put differently, punitive damages are appropriate only when actual or legal malice is shown; "actual malice" is characterized by such factors as personal spite, hatred, or ill will, while "legal malice" is shown by wrongful conduct committed or continued with a willful or reckless disregard of another's rights.  *McClure v. Walgreen Co.*, 613 N.W.2d 225, 231 (Iowa 2000).  As the Court defined it in its final instructions to the jury, "Conduct is willful and wanton when a company or person intentionally does an act of an unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow." (Ex. F, 4/04/16 Tr. 25:3–4; Final Jury Instruction No. 27 at 34.)

Plaintiff has presented no evidence of willful and wanton conduct by Defendants. When directed to summarize the evidence adduced at trial that supported an award of punitive damages, Plaintiff's counsel recited a litany of Defendants' alleged failures—failure to monitor, failure to have a policy on monitoring, failure to medically surveil, etc.  (4/1/16 Tr. 203:22–24.) These alleged failures are not evidence of a specific, intentional, willful or wanton disregard of

13

the rights or safety of anyone.   They are little more than complaints about non-specific, corporate

decision making.   *See Schilligo v. Purolator Courier Corp.*, 824 F.2d 660, 663–65 (8th Cir.

1987) (reversing award of punitive damages and holding that employer's failure to issue letter,

even though it was legally obliged to do so, did not warrant award of punitive damages).   Even

taken with Plaintiff's "evidence" that Defendants knew that DAC contained benzene and that

there had been spills at the plant before,[3] the Court is left with absolutely no cogent evidence to

show an act by Defendants in known disregard for the rights or safety of another.

Despite having called and cross-examined Roy Wilson, J.D. Leuders, Ronald

Reiser, Larry Pendleton, Mark Shepherd, and Troy Stuedemann, Plaintiff was not able to present

evidence from anyone of an intentional, unreasonable act by a person or company in disregard of

an obvious or known risk—let alone one attributable to Defendants.   Plaintiff's own, hired

witness, Dr. Jones, testified that the hazardous communication policy, the benzene monitoring

program, and the respiratory protection program complied with regulatory requirements.   (Ex. B,

3/29/16 Tr. 87:1–88:19.)   She also testified that the MSDS met federal standards and that the

benzene danger signs communicated the hazards to workers.   (*Id.* at 69:6–11; 84:9–14.)

Further, evidence about industry standards or knowledge about benzene from

decades before Dean Dahlin set foot on the Clinton Complex is simply not cogent under Iowa

law to prove willful and wanton conduct.   *See* Iowa Code 668A.1(1)(a).   The conduct of the

defendant that constituted willful and wanton disregard for the rights or safety of another *must*

*arise from the claim.*   *Id.* (emphasis added).   Plaintiff claimed benzene exposure from 1990 to

1995.   Plaintiff's counsel was unable to link what "industry" knew in the decades prior to willful

---

[3]   Plaintiff's improper evidence about earlier spills is not evidence of an intentional act by Defendants, and it was clearly not directed at Dean Dahlin.   The jury agreed by finding that the alleged willful and wanton conduct was *not* specifically directed to Dean Dahlin.   Consequently, even if there were some other evidence to support an award of punitive damages, Plaintiff is entitled to receive only up to twenty-five percent of the award.   Iowa Code 668A.1(2)(b).   The remainder must be remitted to a state-administered trust fund.   *Id.*

and wanton disregard to the rights and safety of Dean Dahlin or other Dahlen Transport truck drivers from 1990 to 1995.

Plaintiff's counsel's attempts to characterize the intentional act as "decision-making" is mere speculation that is not sufficient to support the verdict. *See Fought v. Hayes Wheels Intern. Inc.*, 101 F.3d 1275, 1277 (8th Cir. 1996); *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386 (Iowa 2010) (affirming trial court's denial of punitive damages despite intentional battery because record contained no evidence of personal spite, hatred, or ill will). It is not enough that an act alone be intentional. It must be intentionally done with the requisite mental state—malice. *Strub v. Stillmunkes Salvage & Trucking, Inc.*, 2003 WL 21458400 at *2–3 (Iowa Ct. App. 2003) (reversing award of punitive damages against employer of truck driver because no evidence supported employer's liability despite its intentional act in hiring the driver involved in car wreck with plaintiff). Indeed Plaintiff's counsel summarized the issue succinctly when he said, "[N]obody is going out [] there releasing pipes, there's nothing extreme happening here . . . ." (4/1/16 Tr. 203:22–24.) Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim for punitive damages.

### D. Alternatively, Defendants are entitled to a new trial.

Alternatively, and assuming the Court does not enter judgment that Plaintiff takes nothing, Defendants are entitled to a new trial under Federal Rules 49 and 59.

#### 1. The jury's answers to the Court's special written findings or written questions are irreconcilably inconsistent.

Assuming the Court does not adopt Defendants' proposed interpretation of the jury's verdict, the Court is left with an irreconcilable verdict. "Special answers or findings by the jury must be consistent with each other. If they are irreconcilably inconsistent, they destroy each other." *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 157 (8th Cir. 1978). If

15

presented with an inconsistent verdict, a court may resubmit the case to the jury or order a new trial. *See* FED. R. CIV. P. 49; *Beard v. Flying J, Inc.*, 266 F.3d 792, 800 (8th Cir. 2001) (citing *Karl v. Burlington Northern R.R. Co.*, 880 F.2d 68, 72–73 (8th Cir. 1989)). Defendants objected to the inconsistent verdict before the jury was discharged. (Ex. G, 4/05/16 Tr. 6:19–7:12) Because the jury has been discharged, resubmission is now impossible and the Court must order a new trial if it finds that the verdict is irreconcilably inconsistent. *See* FED. R. CIV. P. 49; *Karl*, 880 F.2d at 72–73.

There is no easy way to reconcile the jury's finding that Defendants were not negligent with respect to failing to warn Dean Dahlin about the hazards from exposure to benzene at their premises with an affirmative finding of liability on premises liability. Assuming that the Court disagrees with Defendants' arguments above on reconciling the answers, the Court would then seemingly have to decide both that the jury found that Defendants were not negligent—Question One—and were negligent—Question Six—with respect to failing to warn Dean Dahlin. *See Bonin v. Tour W., Inc.*, 896 F.2d 1260, 1263 (10th Cir. 1990) (holding that jury's answers that defendants were not negligent was irreconcilably inconsistent with other answer in special verdict apportioning some fault to defendants). The only available remedy is that the Court must order a new trial.

### 2.     The jury verdict forms submitted by the Court were erroneous.

A court's instructions to the jury, when viewed in light of the evidence and the applicable law, must fairly submit the issues in the case to the jury. *Andrews v. Neer*, 253 F.3d 1052, 1059 (8th Cir. 2001) (vacating and remanding case for new trial based on trial court's erroneous verdict-directing instructions which confused three distinct theories of recovery). An erroneous instruction warrants a new trial if the error misled the jury or had a probable effect on

the verdict.  *Friedman & Friedman, Ltd., v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir.

2010) (reversing and remanding case for new trial based on exclusion of requested instruction).

Plaintiff has one cause of action—the alleged wrongful death of Dean Dahlin.

She pleaded several legal theories, including negligence, premises liability based on negligence,

and products liability based on a failure to warn.  (3rd Am. Compl. ¶¶ 19–27, ECF No. 153.)

Each of these theories is premised on negligence under Iowa law.  *Olson v. Prosoco, Inc.*, 522

N.W.2d 284, 289 (Iowa 1994); *Koenig v. Koenig*, 766 N.W.2d 635, 645–46 (Iowa 2009).

Defendants had two duties that were allegedly breached. (Ex. F, 4/04/16 Tr. 16:7–

16.)  One duty based on their ownership of premises and the other based on their manufacture of

a product.  (*Id.*)  Plaintiff did not, and could not articulate any other duty or basis for a breach of

any other duty.  (*Id.*)  This fact is borne out by the *two* specifications of negligence included in

Question One of the verdict.  There was, therefore, no basis for a negligence question apart from

premises liability or products liability based on a failure to warn.  Consequently, it was error to

submit questions for three theories of recovery when, in fact, there were only two because the

questions were duplicative and invited inconsistent answers.  Defendants timely objected to the

Court's proposed instructions for this very reason.  (Ex. F, 4/04/16 Tr. 1:21–5:10; 17:7–18:17.)

The proper way to submit theories based on negligence is by asking a general

negligence question that lists individual specifications of negligence.  *See* Iowa Civ. Jury

Instructions 300.6 (2015); *see also Rinkleff v. Knox*, 375 N.W.2d 262, 266 (Iowa 1985).

Additionally, when a products-liability theory is based only on a failure to warn, it should be

submitted under a negligence theory, not as strict liability.  *Olson*, 522 N.W.2d at 289. ("[T]he

correct submission of instructions regarding a failure to warn claim for damages is under a

theory of negligence and the claim should not be submitted as a theory of strict liability").

Questions One through Three of the verdict form, taken alone, are a proper submission of premises liability and products liability based on a failure to warn under a general negligence question that lists individual specifications of negligence.  Indeed, this was the very form of submission requested by *both* Plaintiff and Defendants in their proposed jury instructions.  (ECF No. 246 & 250.)  However, the Court's Questions Four through Seven and Eight through Eleven ask the same questions in duplication of their submission under Questions One through Three.

The inconsistent verdict returned by the jury demonstrates the prejudicial effect of the duplicative questions submitted to it.  Had the jury been instructed as *both* Plaintiff and Defendants proposed, the jury would have returned a verdict of no liability.  Accordingly, assuming the Court disagrees with the arguments above, the Court should order a new trial.

Additionally, the Court erred by not instructing the jury and not submitting a question in its verdict form on the defense of sole proximate cause.  A sole proximate cause defense relates to the conduct of a third-party that was the sole proximate cause of plaintiff's injury.  *Adam v. T.I.P. Rural Elec. Coop.*, 271 N.W.2d 896, 902 (Iowa 1978).  Defendants proved that the conduct of Dahlen Transport, Inc., was sufficient to merit a jury question that Dahlen Transport, Inc., caused Plaintiff's injuries by its failure to provide a safe work environment.  (Ex. B, 3/29/16 Tr. 100:23–101:5; 115:7–11; 252:9–253:15; Ex. E, 4/01/16 Tr. 127:6–128:7; 149:20–150:15; 153:11–154:6; 164:1–11.)  Because evidence supported the submission of an instruction and question on Defendants' sole proximate cause defense, the Court erred by not submitting the instruction and question and it should order a new trial.

18

**3.    The Court erred by admitting evidence of the Clinton Complex's designation as a Superfund Site.**

Over Defendants' objection, evidence of the Record of Decision entered into between Defendants' predecessors and the Environmental Protection Agency in 1993 which designated portions of the Clinton Complex as a Superfund site was admitted based on Plaintiff's argument that it was relevant to this case.  (Ex. B, 3/29/16 Tr. 181–194; 197–198.)  Though the Court gave a limiting instruction, admission of this evidence was error because it was irrelevant, improper evidence of a settlement, and unfairly prejudicial to Defendants.

Specifically, Lyondell's predecessors did not admit, acknowledge, or accept any liability or fault with respect to any of the matters set forth in the Consent Decree that preceded and authorized the Record of Decision.   Plaintiff effectively used the Record of Decision to impute that Lyondell was liable in this case. FED. R. EVID. 408; *see also Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011) (ordering new trial because trial court had abused discretion by allowing a settlement agreement into evidence); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 535 (D. N.J. 2008) (holding that a prior consent decree between the defendant and a government agency was not admissible under Rule 408 because admission would discourage settlement).

Further, the issues related to the Record of Decision were wholly irrelevant to any issue in this case. FED. R. EVID. 401 and 402.  The Record of Decision dealt with environmental issues such as landfills and groundwater leakage, *not* airborne exposure to DAC or pyrolysis gasoline.  The Court's own limiting instruction effectively acknowledged that the evidence was irrelevant by saying that "[t]here has been no evidence that any groundwater benzene contamination that may have occurred at the Clinton plant in the 1980s had any effect on Dean Dahlin's health." (Ex. B, 3/29/16 Tr. 197–98.)   If the purported groundwater benzene

19

contamination that occurred in 1982 had no effect on Dean Dahlin's health, it was not relevant to the issues in the lawsuit.  Plaintiff argued for admission of evidence of the Record of Decision by promising the Court it was relevant.  Plaintiff, however, did not ever link that evidence in any way to any issue in this case.

Finally, evidence of the Record of Decision unfairly prejudiced Defendants by inflaming the jury or misleading them into assessing damages despite finding that Defendants were not negligent.  The irrelevance of the data in light of its unfair prejudice to Defendants warranted exclusion.  FED. R. EVID. 403.  The only cure is to order a new trial.

### 4.     The jury's verdict was against the great weight of the evidence.

The jury's verdict was against the great weight of the evidence.  "In determining whether a verdict is against the weight of the evidence, a trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'"  *Ryan by Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984) (affirming grant of new trial because verdict was against the great weight of the evidence).  The court should reject a jury's verdict where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred.  *Id.*

Defendants gave warnings regarding potential benzene exposure.  The MSDS included a warning regarding the dangers of benzene as early as 1983.  Mr. Tubbs testified that he remembers seeing MSDS for DAC as early as 1985.  (Ex. A, 3/28/16 Tr. 147:12–25.)  The MSDS were available through Dahlen Transport and at the guard shack of the Clinton Plant.  (*Id.* at 148:1–10; 187:7–16.)  Additionally, danger signs warning that benzene could cause cancer were in place by 1988, two years before Dean Dahlin worked for Dahlen Transport.  (*Id.* at 208:2–211:17; Ex. C, 3/30/16 Tr. 191:6–18; 223:9–17; 224:20–225:5.)  The notations on the air-

monitoring records confirmed the presence of danger signs.  (Ex. B, 3/29/16 Tr. 219:8–220:20; Ex. C, 3/30/16 Tr. 247:8–21.)  Indeed, the effectiveness of the warnings was confirmed by both Mr. Tubbs and Mr. Dahlin, through Cheri Dahlin's testimony.  (Ex. A, 3/28/16 Tr. 172:18–22; Ex. B, 3/29/16 Tr. 131:15–133:11.)

The Defendants presented substantial, un-rebutted testimony regarding the engineering controls implemented to make the loading and unloading of DAC safe.  Defendants used pressurized trailers with vapor recovery as early as 1987 or 1988.  (Ex. C, 3/30/16 Tr. 242:20–243:6.)  During the same time frame, DAC was transferred to and from the pressurized trailers via dripless connection.  (Ex. C, 3/30/16 Tr. 258:14–261:22.)  In addition to the engineering controls, as an added measure of safety, respirators were required during loading and unloading from the 1980s.  (Ex. C, 3/30/16 Tr. 192:21–193:9.)  Indeed, the parties' stipulated that there is no evidence that Dean Dahlin failed to wear a respirator when he was working as a contractor for Lyondell.  (Ex. F, 4/04/16 Tr. 25:7–10.)

In addition to the warnings and engineering controls, Defendants monitored the air for benzene while Dahlen Transport truck drivers loaded and unloaded DAC.  (Ex. C, 3/30/16 Tr. 256:20–257:14.)  Besides the extensive air monitoring reflected in Defendants' trial Exhibit 201 [Ex. H hereto]), Roy Wilson conducted "instantaneous" air monitoring four times per month, two times at the tank farm and two times at the river terminal.  (Ex. C, 3/30/16 Tr. 231:11–242:10; 243:7–253:11.)  Each time Mr. Wilson would take multiple samples for each visit for the entire time that Dean Dahlin hauled DAC.  (*Id.*)  Mr. Wilson testified that he never had a personal air-monitoring measurement above the action level, nor did he ever have an

instantaneous reading above the action level.  (*Id.* at 248:14–249:13.)   The air monitoring confirmed the effectiveness of the warnings and engineering controls.[4]

The great weight of the evidence shows that Plaintiff failed to prove that benzene exposure caused his disease.  Plaintiff's toxicologist, Dr. Smith, testified that he could not give a general causation opinion for less than three ppm-years for MDS and eight ppm-years for AML.  (Ex. C, 3/30/16 Tr. 120:22–122:5.)  Dr. Jones, Plaintiff's industrial hygienist, testified that Dean Dahlin would have received a cumulative dose of between .05 and .5 ppm-years if he wore a respirator and was only exposed during the time he worked at Dahlen Transport.  (Ex. B, 3/29/16 Tr. 105:6–110:22.)   That cumulative exposure is not sufficient to satisfy general causation according to Plaintiff's own expert.

All the witnesses who worked at the facility during the time period agree, and the documentary evidence confirms, that Dahlen Transport exclusively hauled DAC from the Clinton Plant until 1997 or 1998.  (Ex. A, 3/28/16 Tr. 147:6–11; Ex. C, 3/30/16 Tr. 263:23–264:9; Ex. D, 3/31/16 Tr. 199:1–6.)  Cheri Dahlin is the <u>only</u> witness to say that Dean Dahlin worked around DAC while at A&R Transport from 1992 through 1995.  Mrs. Dahlin gave this testimony despite testimony confirming that she never rode with Mr. Dahlin while he worked at A&R Transport and prior testimony indicating that she did not know what cargo he hauled at A&R Transport.  (Ex. D, 3/31/16 Tr. 199:1–6.)  Even if the Court and jury disregarded the great weight of the evidence about whether A&R Transport hauled DAC prior to 1998, Dr. Jones still testified that Dean Dahlin's cumulative exposure while using a respirator was between .2 ppm-years and 3.69 ppm-years, which is not high enough to cause AML according to Dr. Smith.  (Ex.

---

[4]  The air-monitoring also confirmed the lack of impact the DAC spill referenced in the Record of Decision that was 100-150 yards away from the loading area and that occurred at least 8 years prior to Mr. Dahlin hauling DAC.

B, 3/29/16 Tr. 111:1–5; Ex. C, 3/30/16 Tr. 120:22–121:5.)   The great weight of the evidence shows that Defendants were not liable.

**IV.   PRAYER**

Defendants Lyondell Chemical Company, Equistar Chemicals, LP, and Equistar GP, LLC, respectfully request that the Court enter judgment that Plaintiff takes nothing from Defendants, grant oral argument, and all other relief to which Defendants are entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/Tynan Buthod*
Tynan Buthod
(Pro Hac Vice)
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: 713.229.1912
Facsimile:  713.229.2712
ty.buthod@bakerbotts.com

Of Counsel:
Kevin M. Reynolds
WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA  50309-4195
Telephone:  515.288.6041
Facsimile:  515.246.1474
reynolds@whitfieldlaw.com

**ATTORNEYS FOR DEFENDANTS,
LYONDELL CHEMICAL COMPANY,
EQUISTAR CHEMICALS, LP, AND
EQUISTAR GP, LLC**

**CERTIFICATE OF SERVICE**

On April 19, 2016, I hereby certify that I have served all counsel of record electronically through the ECF system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

23

*/s/Tynan Buthod*
Tynan Buthod